UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
ALBERT FÜRST VON THURN UND TAXIS,

              Plaintiff,

        - against -

KARL PRINCE VON THURN UND TAXIS,
THURN UND TAXIS ITALIA S.P.A.,                  04 Civ. 6107 (DAB)
THURN & TAXIS, LLC, KARL PRINCE VON             MEMORANDUM & ORDER
THURN & TAXIS, LLC, THURN UND TAXIS
CAPITAL MANAGEMENT AG, ARGLEN & CO.,
LLC, ARGLEN ACQUISITIONS, LLC,
MENTOR CAPITAL PARTNERS, LLC, and
MENTOR CAPITAL PARTNERS, LTD.,

              Defendants.
-------------------------------------X
DEBORAH A. BATTS, United States District Judge.

        Plaintiff Albert Fürst von Thurn und Taxis has filed the

above-captioned case against Defendants Karl Prince von Thurn und

Taxis, Thurn und Taxis Italia S.P.A., Thurn & Taxis, LLC, Karl

Prince von Thurn & Taxis, LLC, Thurn und Taxis Capital Management

AG, Arglen & Co., LLC, Arglen Acquisitions, LLC, Mentor Capital

Partners, LLC and Mentor Capital Partners, Ltd.  Plaintiff has

asserted five causes of action against Defendants: (1) false

endorsement under 15 U.S.C. § 1125(a); (2) violation of New York

Civil Rights Law §§ 50-51; (3) violation of the Anti-

Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); (4)

violation of New York General Business Law § 349; and (5) that

Defendants have engaged in common law unfair competition.

        Defendants Thurn & Taxis, LLC, Karl Prince von Thurn &

Taxis, LLC, Thurn und Taxis Capital Management AG, Arglen & Co., LLC, and Arglen Acquisitions, LLC ("Moving Defendants") have moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendant Thurn und Taxis Capital Management AG also moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(2).[1]

## I. BACKGROUND

The following facts are taken from Plaintiff's Complaint and are assumed to be true for the purposes of Defendants' Motion to Dismiss.

Plaintiff Prince Albert Fürst von Thurn und Taxis ("Prince Albert"), representative of the von Thurn und Taxis family of Regensburg, Germany (hereinafter referred to as the "Thurn und Taxis Family" or "the Family"), is head of the Family, the heir to its fortune, and as its representative, the holder of the Thurn und Taxis Family's trademarks. (Compl. ¶ 1.) Prince Albert resides in Regensburg, Germany. (Id. ¶ 4.)

Upon information and belief, Defendant Karl Prince von Thurn und Taxis ("Karl Prince") is a resident of New York, and has at all relevant times, directed or controlled the business

---

[1] Defendants Karl Prince von Thurn und Taxis and Thurn und Taxis Italia S.P.A. have not appeared in this action. Plaintiff has filed a default judgment motion against them, which is addressed in this Memorandum & Order.

2

activities of Defendants Thurn & Taxis, LLC, Karl Prince von
Thurn & Taxis, LLC, and Thurn & Taxis Italia S.P.A., in New York.
(Id. ¶ 5.)  Thurn und Taxis Italia S.P.A. is an Italian
corporation with offices in New York and its principal place of
business in Italy.  Thurn & Taxis, LLC is a Delaware corporation
with its principal place of business in New York.  Karl Prince
von Thurn & Taxis, LLC is a New York corporation with its
principal place of business in New York.  (Id. ¶¶ 6-8.)

Defendant Thurn und Taxis Capital Management AG is a company
incorporated in the Principality of Liechtenstein, with places of
business in Liechtenstein and Switzerland.  (Id. ¶ 9.)
Defendants Arglen & Co., LLC and Arglen Acquisitions, LLC are
Delaware corporations with their principal places of business in
New York.  (Id. ¶¶ 10-11.)  Defendant Mentor Capital Partners,
Ltd. is a Pennsylvania corporation with its principal place of
business in Pennsylvania.[2]

## A.  The Thurn und Taxis Family

Plaintiff is the 12th Prince of the Thurn und Taxis Family,
"an internationally celebrated and respected European royal

_____

[2] **The final defendant named in the Complaint, Mentor Capital
Partners, LLC was terminated as a defendant by Judgment and
Permanent Injunction on March 17, 2005.**

3

family which has played an important role in the development of all aspects of modern European communication, transportation and industry." (Id. ¶¶ 14, 16.) For more than 300 years, the Family controlled all imperial communications between Vienna and the Hapsburg empire, through an officially sanctioned monopoly. (Id. ¶ 14.) Through this monopoly, the Family was able to establish the first large-scale postal service. Because of this history, and the "overwhelming prevalence of the Thurn und Taxis postal system throughout Europe," the Thurn und Taxis Family is "synonymous with European industry and commerce." (Id.)

Although it gradually lost its monopoly over the postal service, the Family increased its wealth, power and influence in commerce and industry, due to its interests in numerous other enterprises, such as real estate, banking and railroads. Prince Albert's great-grandfather, Albert Prinz von Thurn und Taxis was particularly famous for his fortune and business interests at the turn of the twentieth century. (Id. ¶ 15.)

Prince Albert is one of three children born to Prince Johannes von Thurn und Taxis, the 11th Prince of Thurn und Taxis, and Princess Gloria von Thurn und Taxis. His parents led prominent lives as members of international society. His sisters are Princess Maria Theresia and Princess Elisabeth. Prince Albert inherited the princely title upon his father's death in

4

1990.  (Id. ¶ 16.)

    In recent years, the Family has expanded its business interests to include banking, finance, agriculture and forestry, real estate and brewing.  The Family's holdings include a private bank, the Thurn und Taxis brewery and other investments.  (Id. ¶ 17.)  Throughout history, the Family has been known for its business acumen and investment strategies in building one of Europe's largest fortunes.  The current matriarch, Plaintiff's mother, Princess Gloria von Thurn und Taxis, has received wide publicity for her business acumen, since taking charge of the management of the Family's fortune following her husband's death in 1990.  (Id. ¶ 18.)

    The Family has also received much publicity in the "popular social press," having been featured regularly in society pages. Plaintiff has also been identified in <u>Forbes</u> <u>Magazine</u> as the world's youngest billionaire and is listed number 278 on Forbes' "The World's Richest People" List.  (Id. ¶ 19.)

    The Family has also used its celebrity to promote charitable causes.  It is active in promoting its rich history and contributions to German culture by making the Palaces of the Princes of Thurn und Taxis in Regensburg open to the public.  The grounds, including museums, are open to public tours, and rooms in the castle can be rented for private functions.  A description

and virtual tour of the grounds can be found on the official
Family website (http://www.thurnundtaxis.de).  The opening of the
Palace has increased the Family's public profile and the
worldwide recognition of the Family.  Numerous tourists from the
United States visit the Palace, and thousands of U.S. residents
access the Family website annually.  (Id. ¶¶ 20-21.)

B.  Trademarks

     Plaintiff, as representative of the Thurn und Taxis Family,
owns the following three trademarks registered with the German
Patent and Trademark Office:

- FÜRST THURN UND TAXIS; Registration No. 30240914: Registered
  on or about April 24, 2003, for current or future use with
  goods and services, including matters relating to insurance,
  real estate, finance, advertising and business management.

- THURN UND TAXIS; Registration No. 30240915: Registered on or
  about April 24, 2003, for similar matters as listed with
  regard to the FÜRST THURN UND TAXIS trademark.

- TT and Design; Registration No. 30240916: Mark consists of
  the letters TT with a stylized crown design which was
  registered on or about May 5, 2003, for similar matters as
  listed with regard to the FÜRST THURN UND TAXIS and THURN
  UND TAXIS trademarks.

Plaintiff also filed trademark applications with the United
States Patent and Trademark Office on December 11, 2003, for the
marks registered with the German Patent and Trademark Office.
(Id. ¶¶ 22-23.)

6

In addition, Plaintiff owns the domain name registration for "www.thurnundtaxis.de." (Id. ¶ 24.) The Family's crest is also well-known. The crest includes a coat of arms and crown design. This crest is feature prominently on the Family's website. (Id. ¶ 25; <u>see also</u> id. at Ex. B.)

C. Defendants' Infringing Activities

According to Plaintiff, Defendant Karl Prince von Thurn und Taxis ("Karl Prince") is a member of the "Tsheck" branch of the Thurn und Taxis Family, which separated from the Regensburg branch in 1748. The Tsheck branch is unknown today, and references to the Thurn und Taxis Family are known and understood to be references to Plaintiff's Regensburg branch. Karl Prince is a distant cousin of Plaintiff's father. He has never been involved in the day-to-day affairs of the Thurn und Taxis Family or any of the Family's business enterprises. (Id. ¶ 26.) Despite Karl Prince's distant relationship to the Family, Plaintiff alleges that Karl Prince "has engaged in a scheme to capitalize on the good will associated with the Thurn Family in international business circles, by using the Family name and referring prominently to its rich history, particularly in business matters . . . ." (Id. ¶ 27.) Karl Prince has done this to promote a group of affiliated investment companies in the

United States and Europe, referred to in the Complaint as the "Thurn und Taxis Group,"[3] in a manner that falsely and misleadingly implies endorsement, or sponsorship by, or association or affiliation with the Thurn und Taxis Family. (Id.)

1.  Thurn & Taxis, LLC and Arglen & Co., LLC

In or about June, 2003, the Family learned that Karl Prince was involved with Defendant Thurn & Taxis, LLC, which is believed to have provided financial advice and/or opportunities to investors in the United States and Europe.  Thurn & Taxis, LLC's website, http://www.thurn-taxis.com, prominently featured a logo consisting of the coat of arms and crown of the Thurn und Taxis Family and included a page entitled "Thurn & Taxis: The History of an Enterprising Family."  This page set forth an extensive description of the Family's success in building its vast fortune through business enterprises, including statements such as: the Family's "wealth was vast and few other European families could match it;" Albert Prinz von Thurn und Taxis, great-grandfather of

---

[3] Upon information and belief, the Thurn und Taxis Group consists of all the corporate Defendants named in the Complaint as well as Karl Prince von Thurn und Taxis Asset Management AG Schweiz (Basel), Karl Prinz von Thurn und Taxis Immobilen AG (Munich), Thurn und Taxis Vermogensverwaltungs AG (Zurich), adn Secunda Effekten AG (Munich).  (Id. ¶ 27.)

8

Plaitniff, "was famous throughout Europe for the size of his fortune;" and "by the 1990's the family fortune had expanded to include five banks and several entertainment businesses." (Id. ¶¶ 29-30.) The website described Karl Prince as the chairman of the Thurn & Taxis group of companies and represented that "Thurn & Taxis partners with some of the world's most sagacious and influential individual, corporations, and funds." (Id. ¶ 31.)

Plaintiff believes that Defendant Arglen & Co., LLC is affiliated with Karl Prince and the Thurn und Taxis Group. In addition, Garry P. Gyselen and Barry Kolevzon, principals or otherwise employed by Arglen, were listed as the "New York Team" on the Thurn & Taxis, LLC website in or about August, 2003. Plaintiff also believes that Defendant Thurn und Taxis Capital Management AG owns the domain name registration "www.thurn-taxis.com" and is an affiliate of Defendant Thurn & Taxis, LLC. (Id. ¶¶ 33-34.)

Thurn & Taxis, LLC is not connected in any way to the Thurn und Taxis Family. However, Plaintiff alleges that the use of the name Thurn & Taxis, LLC, the domain name of the Thurn & Taxis, LLC website (www.thurn-taxis.com), the use of the Thurn und Taxis crest and crown, and the extensive discussion of the Family's history and business interests, were intended to falsely suggest that Thurn & Taxis, LLC's services and activities were endorsed,

sponsored, authorized or approved by Plaintiff and the Family. The use of the Family's name, crest and crown was not approved by Plaintiff or the Family. (Id. ¶ 32.)

Based on Karl Prince's activities, attorneys for the Family sent a letter to Thurn & Taxis, LLC on July 11, 2003, demanding that the company cease and desist from any further use of the Family name or any reference to the Family's business history due to the misleading nature of the representations of the purported relationship between Thurn & Taxis, LLC and the Family. Thurn & Taxis, LLC refused, asserting that Karl Prince was authorized to use his name, and as "Chairman" of the company, he was "actively involved in the execution of the company's business in North America and Europe." (Id. ¶¶ 35-36.) The Family reiterated its cease and desist demand on September 30, 2003, and suggested that the company use a different name, such as "Arglen" in light of the apparent affiliation between Arglen and Thurn & Taxis, LLC. In response to this demand, on October 7, 2003, Thurn & Taxis, LLC advised the Family that it had revised the historical section of its website, to clarify that Karl Prince represented that "Moravian branch of the family rather than the Regensburg branch." (Id. ¶ 37-38.)

However, Plaintiff states that the "revised" page still prominently featured the history of the Thurn und Taxis Family,

and not Karl Prince, and the distinction between the branches was made only late in the description and still failed to distinguish Karl Prince from the remainder of the Family.  The misleading suggestion of a connection between Thurn & Taxis, LLC and the Family remained.  (Id. ¶ 39.)  Plaintiff contends that Thurn & Taxis, LLC deliberately maintained the use of the Thurn und Taxis Family name and the references to its history and business interests, to mislead investors into believing that Karl Prince and Thurn & Taxis, LLC were representing or associated with the Family and their business interests.  (Id. ¶ 41.)

In or about October, 2003, Karl Prince purportedly resigned as Chairman of Thurn & Taxis, LLC and requested that the company stop using the name of the Family.  However, Thurn & Taxis, LLC continues to be listed as an active corporation with the New York State Department of State, and upon information and belief, continues to conduct business in the same manner as it did prior to October, 2003.  (Id. ¶ 40.)


2.  Mentor Capital Partners

In or about October, 2003, the Family became aware that Karl Prince had become associated as "special partner" with an investment group, Mentor Capital Partners, LLC of Naples, Florida.  In materials announcing Karl Prince's partnership,

Mentor Capital referred to Karl Prince as a member of the "distinguished" Thurn und Taxis Family and a "current steward of the Thurn und Taxis name."  Karl Prince was also described as the leader of an investment group and a board member of several affiliated companies.  (Id. ¶¶ 42-43.)

The website for Mentor Capital (http://www.mentcap.com) described the Thurn und Taxis Family as "an entity that had 'amassed a fortune through astute management and shrewd investment' over 500 years . . ."  It further suggested that the Family was involved with, or backing, Karl Prince and a purported $50 million limited partner commitment "from Thurn and Taxis and affiliates."  (Id. ¶ 44.)

On October 22, 2003, the Family sent Mentor Capital a cease and desist letter, demanding that it refrain from any further use of the Family's name and history in any form in any future business dealings.  Mentor Capital refused to comply with this demand, taking the position that it was merely making references to Karl Prince's personal heritage in the website.  Mentor Capital also advised by letter that Karl Prince had executed a commitment with respect to a potential investment by himself and persons and entities affiliated with him, and that it was anticipated that Karl Prince would hold partner status in relation to a Mentor Capital, LLC fund.  (Id. ¶¶ 45-46.)  Upon

information and belief, Karl Prince was not an investor or leader of any investment group in a Mentor Capital, LLC fund but was assisting Mentor Capital in promoting investment activity. (Id. ¶ 47.)

On or about December 4, 2003, the Family again made its cease and desist demand to Mentor Capital. Instead of responding to this second demand, Mentor Capital continued to promote Karl Prince's association with the Thurn und Taxis Family. In or about January, 2004, the Mentor Capital website described Karl Prince as an "executive partner" in its fund. Karl Prince's biography continued to refer to the Thurn und Taxis Family, its "rich history," "extraordinary business acumen," the "fortune it had amassed through shrewd investment" and the "influence and respect it engenders in the business community." (Id. ¶ 48-49.) The website also stated that Karl Prince was an active and influential member of boards of several Thurn und Taxis companies. None of these companies are affiliated or associated with the Thurn und Taxis Family. (Id. ¶ 49.)

Plaintiff discovered that all references to Karl Prince were removed from the Mentor Capital website in or about April, 2004. However, upon information and belief, Mentor Capital continues to make reference to and use of the Thurn und Taxis Family name and business history in its business development efforts in the

United States and abroad.  (Id. ¶ 50.)

Plaintiff contends that Mentor Capital's use of the Family name and history, without consent, was intended to mislead investors into believing that Karl Prince and Mentor Capital were representing or otherwise associated with the Thurn und Taxis Family in their investment business.

### 3.  Thurn und Taxis Italia

According to Plaintiff, the latest unauthorized use of the Family name and reputation by Karl Prince has been through a new entity, Defendant Thurn und Taxis Italia.  The Family discovered this in or about July, 2004.  Thurn und Taxis Italia is a financial services firm with offices in Rome, Munich, Zurich and New York.  Its website, http://www.thurntaxisitalia.com, prominently features a logo which consists of the Family coat of arms and crest.  According to the website, the offices of Thurn und Taxis Italia in New York is located at the same address as Thurn & Taxis, LLC:  45 Rockefeller Plaza, New York, New York. (Id. ¶¶ 52-54.)

The website lists the following entities as affiliates: Karl Prinz von Thurn und Taxis Asset Management AG Schweiz, Karl Prinz von Thurn und Taxis Immobilen AG (Munich), Arglen & Co., LLC, and Mentor Capital Partners, Ltd. (allegedly an affiliate of Mentor

Capital Partners, LLC).  Karl Prince von Thurn und Taxis, LLC and Thurn und Taxis Capital Management are also believed to be affiliates.  (Id. ¶¶ 55-57.)  The website also lists the office address of Secunda Efekten AG as the Munich office of Thurn und Taxis Italia.

The website includes an extensive history of the Thurn und Taxis Family.  It states that "the name Thurn und Taxis was synonymous with transportation, communication and wealth," and that Albert Prinz von Thurn und Taxis (Plaintiff's great-grandfather) was famous throughout Europe for his fortune.  It also referred to the Family's wealth as vast and unmatched by most in Europe.  (Id. ¶ 59.)  Karl Prince is described as the "non-executive chairman of the Thurn und Taxis Group of Companies."  (Id.)

Plaintiff contends that Thurn und Taxis Italia and its affiliates actively solicit investors in New York and the rest of the United States, and abroad, via the Thurn und Taxis Italia website and through their New York-based operations.  (Id. ¶ 58.) The website states that Thurn und Taxis Italia's "carefully selected strategic alliances, both nationally and internationally," provide it with all the necessary functions and services to effectively attract capital; its alliances further enhance its expertise.  (Id. ¶ 60.)

Plaintiff states that the Thurn und Taxis Family is not connected with Thurn und Taxis Italia. However, Plaintiff contends that Defendants' use of the Family's name and reference, and use of the domain name "www.thurntaxisitalia.com" are all intended to falsely suggest endorsement, sponsorship, authorization, or approval by Plaintiff and the Family, or the Thurn & Taxis Group.

### 4. Domain Name Registrations

Without Plaintiff's consent, and after the distinctive THURN UND TAXIS name and mark became famous, and "in furtherance of their efforts to mislead investors into believing they are endorsed by or connected with the Family," Defendants engaged in a scheme to acquire multiple domain names which are identical to or confusingly similar to domain names and marks held by the Family. (Id. ¶ 63.)

Arglen Acquisitions, LLC, on behalf of Karl Prince, corporate Defendants and the Thurn und Taxis Group, registered the domain name "kpthurntaxis.com" and "thurntaxisgp.com." Thurn und Taxis Italia, on behalf of the same group, registered and used the domain name "thurntaxisitalia.com." Thurn und Taxis Capital Management AG, on behalf of the same group, registered and used the domain name "thurn-taxis.com." Secunda, on behalf

of the same group, registered and used the domain names "thurn-taxis-immo.com" and "thurn-taxis-immo.de."  (Id. ¶¶ 64-67.)

Plaintiff contends that the domain names were registered "with a bad faith intent to profit from the enormous good will the Thurn und Taxis Family has built up in its famous and distinctive name and associated trademarks . . . ."  (Id. ¶ 68.) Plaintiff states that Defendants have no intellectual property rights in those domain names, that they have not made a bona fide noncommercial use of the Thurn und Taxis Family name and mark, and that they registered the domain names knowing that the Thurn und Taxis name and mark are both distinctive and famous.  (Id.)

Based upon Defendants' alleged conduct, Plaintiff has brought this case against them, alleging false endorsement, violation of the Anti-Cybersquatting Consumer Protection Act, New York Civil Rights Law §§ 50-51, New York General Business Law § 349, and common law unfair competition.


II.  DISCUSSION

Thurn und Taxis Capital Management AG moves to dismiss the Complaint against it since the Court lacks personal jurisdiction over this defendant.

The remaining Defendants have moved to dismiss the first cause of action on the ground that Plaintiff cannot establish

17

trademark rights in the United States under the Lanham Act; the second cause of action as untimely; and the remaining causes of action on the ground that Plaintiff's pleadings fail to allege requisite elements.  In addition, Defendants allege that all claims against Karl Prince von Thurn & Taxis, LLC and Arglen & Co., LLC should be dismissed because no actionable wrongdoing is alleged against these defendants, and that all claims, except the third cause of action, should be dismissed against Arglen Acquisitions, LLC for the same reason.

## A.    Personal Jurisdiction

Defendant Thurn und Taxis Capital Management AG ("Capital Management") moves to dismiss the Complaint as against it pursuant to Fed. R. Civ. P. 12(b)(2).

When determining a motion to dismiss for lack of personal jurisdiction, the Court must undertake a two-part analysis. First, personal jurisdiction over the defendant must be established according to the laws of the appropriate jurisdiction.  In a federal question case where the defendant resides outside the forum, the court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process.  See PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).

The Lanham Act does not provide for nationwide service of process; hence, this Court looks to New York's statutes to determine personal jurisdiction.  Sunward Elec., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004).

In the face of a challenge to personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff has the burden of establishing in personam jurisdiction.  See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994); see also Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).  "Eventually personal jurisdiction must be established by a preponderance of the evidence, either at an evidentiary hearing or at trial.  But where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor."  A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79 (2d Cir. 1993).  At this stage, the plaintiff need make only a prima facie showing of jurisdiction.  Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981); see also Metropolitan Life Ins. Co. v. Roberston Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996) ("Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction.").

In support of its Motion to Dismiss for lack of personal

19

jurisdiction, Defendant Thurn und Taxis Capital Management has submitted the declaration of Dr. Dieter Wicki, the President and CEO of Thurn und Taxis Capital Management. In his declaration, Dr. Wicki states that Capital Management is incorporated in Liechtenstein, with its place of business also in Liechtenstein. (Wicki Decl. ¶ 3.) Capital Management provides "corporate finance advisory services solely to its European clientele" and does not market itself to the United States or solicit any business in the United States. (Id. ¶ 4.) According to Dr. Wicki, Capital Management does not maintain offices or a business address in the United States, and does not have any legal affiliations with any of the defendants in this case, except with Defendant Karl Prince, who is the Chairman of Capital Management. (Id. ¶¶ 5-6.) Lastly, Dr. Wicki states that although Capital Management, with the consent and authorization of Karl Prince, registered the domain name "thurn-taxis.com," the domain name was not operated or owned by Capital Management (and the website is now defunct). (Id. ¶ 7.)

Plaintiff disagrees and argues that personal jurisdiction over Capital Management is proper under both New York's general jurisdiction statute, N.Y. C.P.L.R. § 301, and New York's long-arm statute, N.Y. C.P.L.R. § 302. In support of its claim that it has made a prima facie showing of personal jurisdiction over

Capital Management, Plaintiff alleges that Capital Management "transacts business" in New York; and that it owns the domain name "www.thurn-taxis.com," the website of its New York-based affiliate, Defendant Thurn & Taxis, LLC, a New York Company, "and which may fairly be imputed to Capital Management." (Pl.'s Mem. Law at 20.) Plaintiff states that the Complaint also alleges that Capital Management actively solicits investors in New York through its New York-based operations.[4] (Id. at 21.)

### 1. N.Y. C.P.L.R. § 301

N.Y. C.P.L.R. § 301 provides for personal jurisdiction over a foreign corporation that is "doing business" in New York. N.Y. C.P.L.R. § 301. "Section 301, as construed by New York courts, permits a court to exercise jurisdiction over a foreign corporation on any cause of action if the defendant is engaged in such continuous and systematic course of doing business [in New York] as to warrant a finding of presence in this jurisdiction." Landoil Resources Corp. v. Alexander & Alexander Services, Inc., 918 F.2d 1039, 1043 (2d Cir. 1991) (internal quotation marks and citations omitted). The test is fact-sensitive and pragmatic and requires a court to "analyze a defendant's connections to the

---

[4] Plaintiff cites ¶¶ 57-58 of the Complaint for this statement.

forum state not for the sake of contact-counting, but rather for whether such contacts show a continuous, permanent and substantial activity in New York."  Id. (internal quotation marks omitted).

In determining the propriety of personal jurisdiction under this pragmatic standard, "New York courts have generally focused on the following indicia of jurisdiction: the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York."  Id.; Loberiza v. Calluna Maritime Corp., 781 F. Supp. 1028, 1030 (S.D.N.Y. 1992). "However, the 'solicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer or purveyor of services.'" Landoil, 918 F.2d at 1043 (quoting Laufer v. Ostrow, 55 N.Y. 2d 305, 310 (1982)). Furthermore, the list of factors is non-exclusive, and a court must look at the case as a whole rather than focusing on any single factor.  PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).

According to Plaintiff, general jurisdiction under § 301 has been alleged because Capital Management owns the domain name "thurn-taxis.com," the website for Thurn & Taxis, LLC which promoted Capital Management.  In addition, Karl Prince's

involvement with all corporate defendants indicates overlapping management and/or ownership.  Finally, Plaintiff alleges that overlapping marketing is demonstrated by the "www.thurn-taxis.com" and "www.thurntaxisitalia.com" websites, which market both Capital Management and the New York-based entities as one. (Pl.'s Mem. Law at 22-23.)

Although Dr. Wicki has submitted a declaration stating that Capital Management is not affiliated with the other corporate defendants, the information on the website "thurn-taxis.com" appears to contradict that statement.  The manner in which Capital Management is described, as the "Zurich team" of the Thurn & Taxis group of companies, seems to imply that all the listed corporations on that website work together in some manner, with the leadership of Defendant Karl Prince.  The website clearly is a solicitation of investors, and the website does not make a distinction between the Zurich team and the New York team in terms of the geographical limitations of each team's business services.

Accordingly, the Court finds that Plaintiff has made a prima facie case for personal jurisdiction under § 301.


2.  Due Process

After personal jurisdiction is established over the

defendant according to the laws of the forum state, the Court

must determine whether the exercise of jurisdiction under the

relevant state law comports with due process.  <u>Bensusan Rest.</u>

<u>Corp. v. King</u>, 126 F.3d 25, 27 (2d Cir. 1997).  The Due Process

Clause of the Fourteenth Amendment requires that in order for a

court to exercise jurisdiction over a non-resident defendant, the

defendant must have "'minimum contacts with [the forum] such that

maintenance of the suit does not offend traditional notions of

fair play and substantial justice.'"  <u>Helicopteros Nacionales de</u>

<u>Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984) (quoting

<u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)).

"As a practical matter, the Due Process Clause permits the

exercise of jurisdiction in a broader range of circumstances than

CPLR § 301."  <u>M'Baye v. World Boxing Ass'n</u>, No. 05 Civ. 9581,

2006 WL 1120597 (S.D.N.Y. Apr. 28, 2006).  Accordingly, as the

Court has found that Plaintiff has made a <u>prima</u> <u>facie</u> showing of

personal jurisdiction under §301, the exercise of personal

jurisdiction over Defendant Capital Management comports with due

process.


B.  12(b)(6)

     In a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the

Court "must accept as true the factual allegations in the

complaint, and draw all reasonable inferences in favor of the plaintiff." Bolt Elec., Inc. V. City of New York, 53 F.3d 465, 469 (2d Cir. 1995) (citations omitted). "The district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999). A court's review of such a motion is limited and "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). Dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." Cooper v. Park, 140 F.3d 433, 440 (2d Cir. 1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).


1.   Lanham Act: False Endorsement

Defendants move to dismiss Plaintiff's claim under the Lanham Act on the grounds that Plaintiff has failed to allege either a claim for false endorsement or a claim under the "famous marks doctrine."

Section 43(a) of the Lanham Act provides that

25

> Any person who, on or in connection with any goods
> or services, . . . , uses in commerce any word,
> term, name, symbol, or device, or any combination
> thereof, or any false designation of origin, false
> or misleading description of fact, or false or
> misleading representation of fact, which (A) is
> likely to cause confusion, or to cause mistake, or
> to deceive as to the affiliation, connection, or
> association of such person with another person, or
> as to the origin, sponsorship, or approval of his
> or her goods, services, or commercial activities
> by another person, . . . shall be liable in a civil
> action by any person who believes that he or she is
> likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Section 43(a) provides the statutory basis for a claim of false endorsement. Pelton v. Rexall Sundown, Inc., No. 99 Civ. 4342, 2001 WL 327164, at *3 (S.D.N.Y. Apr. 4, 2001) (citing Albert v. Apex Fitness, Inc., No. 97 Civ. 1151, 1997 WL 323899, at *1 (S.D.N.Y. June 13, 1997)). In order to state a claim for false endorsement under the Lanham Act, plaintiff must establish that: "(1) goods or services were involved, (2) there was an effect on interstate commerce, and (3) there was either a false designation of origin or a false description of the goods or services." Id. (citing Allen v. National Video, Inc., 610 F. Supp. 612, 625 (S.D.N.Y. 1985)). Standing to assert a § 43(a) claim is limited to a "purely commercial class" of plaintiffs. Colligan v. Activities Club of New York, Ltd., 442 F.2d 686, 692 (2d Cir.), cert. denied, 404 U.S. 1004 (1971). A plaintiff in a

26

§ 43(a) action need not be a direct competitor of the defendant, but there must be a "potential for a commercial or competitive injury." <u>Berni v. International Gourmet Restaurants</u>, 838 F.2d 642, 648 (2d Cir. 1988). A § 43(a) claim for false endorsement can also be brought by celebrities.

> A celebrity has a similar commercial investment in the "drawing power" of his or her name and face in endorsing products and in marketing a career. The celebrity's investment depends upon the good will of the public, and infringement of the celebrity's rights also implicates the public's interest in being free from deception when it relies on a public figure's endorsement in an advertisement. The underlying purposes of the Lanham Act therefore appear to be implicated in cases of misrepresentations regarding the endorsement of goods and services.

<u>Allen v. National Video, Inc.</u>, 610 F.Supp. 612, 625-26 (S.D.N.Y. 1985). Under the law of false endorsement, likelihood of customer confusion is the determinative issue. <u>EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.</u>, 228 F.3d 56, 62 (2d Cir. 2000).

Defendants argue that Plaintiff is not an international celebrity, and hence cannot make a false endorsement claim.[5] The

---

[5] Defendants also argue that celebrity status is not available to Plaintiff because he does not improperly suggest an endorsement by him in his individual capacity but rather an endorsement of the Thurn und Taxis Family, "an undefined amorphous entity not a party to this action." (Defs.' Reply at 4.) However, it is clear from the Complaint that Plaintiff has brought this action as the representative of the Thurn und Taxis

Complaint, however, alleges that Plaintiff and the Thurn und Taxis Family, is well-known throughout the world. (Compl. ¶¶ 1, 14, 19, 25.) The Complaint specifically alleges that numerous tourists from the United States visit both the Family's Palace and the Family's website annually.[6] (Id. ¶ 21.)

The Complaint also alleges that Defendants have utilized the Thurn und Taxis name, mentioned the Family's history in many websites associated with Defendants, and displayed the Family's crests on at least one of these websites.

In reading the Complaint in the light most favorable to Plaintiff, it appears to the Court that he has sufficiently alleged a claim for false endorsement under § 43(a) of the Lanham Act, based on the celebrity status of Plaintiff, and the Thurn und Taxis Family, of which he is the representative, and facts alleging the possibility of consumer confusion by Defendants' actions.[7] Accordingly, Defendants' Motion to Dismiss Plaintiff's

_____

Family. (Compl. ¶ 22.)

[6] In addition, a quick search on the Internet for the Thurn und Taxis Family yielded close to 200,000 results.

[7] Defendants argue that Plaintiff cannot bring a false endorsement claim because he has not "established any trademark rights in the United States . . . ." (Defs.' Reply at 4.) However, as is clear from Allen v. National Video, 610 F.Supp. 612 (S.D.N.Y. 1985), the trademark-like rights of a celebrity exist in the celebrity's person, name and face, because of his or her status as a celebrity. It may be the case that Plaintiff and

false endorsement claim under § 43(a) of the Lanham Act is
DENIED.


2.  New York Civil Rights Law §§ 50-51

Defendants move to dismiss Plaintiff's New York Civil Rights
Law claim as time-barred.

Section 50 of the New York Civil Rights Law provides that "A
person, firm or corporation that uses for advertising purposes or
for the purposes of trade, the name, portrait or picture of any
living person without having first obtained the written consent
of such person . . . is guilty of a misdemeanor."  Section 51
creates a private right of action in equity and law for
violations of § 50.

The statute of limitations on claims based on New York Civil
Rights Law §§ 50-51 is one year.  See N.Y. C.P.L.R. § 215.
Defendants argue that Plaintiff's claim based on New York Civil

---

the Thurn und Taxis Family, as German royalty, may not actually
have the sufficient recognition in the United States to claim
international celebrity status, but the Complaint has
sufficiently alleged such celebrity status, and as such, this
issue cannot be resolved in Defendants' favor on a motion to
dismiss.

Defendants also appear to conflate the celebrity false
endorsement claim and the "famous marks doctrine," which
Plaintiff concedes, is not the basis of his Lanham Act claim.
(Pl.'s Mem. Law at 10.)

Rights Law §§ 50 and 51 is time-barred because of the single
publication rule.

The single publication rule provides that "'the publication
of a defamatory statement in a single issue of a newspaper, or a
single issue of a magazine, although such publication consists of
thousands of copies widely distributed, is, in legal effect, one
publication which gives rise to one cause of action and that the
applicable [s]tatute of [l]imitations runs from the date of that
publication.'" Firth v. State, 98 N.Y.2d 365, 369 (2002) (quoting
Gregoire v. Putnam's Sons, 298 N.Y. 119, 123 (1948)).
"Republication, retriggering the period of limitations, occurs
upon a separate aggregate publication from the original, on a
different occasion, which is not merely 'a delayed circulation of
the original edition.'" Id. at 371 (quoting Rinaldi v. Viking
Penguin, 52 N.Y.2d. 422, 435 (1981)). This exception is based on
the idea that the subsequent publication is designed to reach and
actually reaches a new audience. Id.

In Firth, the New York Court of Appeals found that an
allegedly defamatory report was not a republication that would
retrigger the statute of limitations when an unrelated report was
added to the website. This case, however, differs from Firth.
According to the Complaint, the alleged second publication of the
Thurn und Taxis name was a revision of the first allegedly

unlawful use of the name in or about July, 2003, on the Thurn &
Taxis, LLC website. (Compl. ¶¶ 38-39.) This revised section of
the website concerned the Thurn und Taxis Family, and Plaintiff
alleges that this revision is also an unlawful use of the Family
name. (Pl.'s Mem. of Law at 15.)

Defendants state that the first and second versions of the
section on the history of the Thurn und Taxis Family on the Thurn
& Taxis, LLC website were the same, the only difference being an
addition to the second version of a modification of Karl Prince's
history. (Defs.' Reply at 5.) However, neither party has
furnished a copy of the second version to the Court.

Reading the Complaint in the light most favorable to
Plaintiff, the Court finds that Plaintiff's New York Civil Rights
Law claim is not time-barred.


3. Anti-Cybersquatting Consumer Protection Act

Defendants move to dismiss Plaintiff's claim pursuant to the
Anti-Cybersquatting Consumer Protection Act ("ACPA") because
Plaintiff cannot demonstrate "bad faith" adoption of the domain
names by Defendants.

The purpose of ACPA "was to respond to concerns over the
proliferation of cybersquatting - the Internet version of a land
grab." Lewittes v. Cohen, No. 03 Civ. 189, 2004 WL 1171261, at *8

31

(S.D.N.Y. May 26, 2004) (internal quotations and citations
omitted). Specifically, the ACPA was designed to focus on
individuals who "register well-known brand names as Internet
domain names in order to extract payment from the rightful owners
of the marks, . . . register well-known marks to prey on consumer
confusion by misusing the domain name to divert customers from
the mark owner's site to the cybersquatter's own site, and target
distinctive marks to defraud consumers, including to engage in
counterfeiting activities.'" <u>Lucas Nursery v. Grosse</u>, 359 F.3d
806, 809 (6th Cir. 2004) (quoting S.Rep. No. 106-104 at 5-6).

In order to succeed on an ACPA claim, a plaintiff must prove
the following elements: (1) the defendant has registered,
trafficked in or used a domain name, (2) identical or confusingly
similar to a mark owned by the plaintiff, (3) which was
distinctive at the time of defendant's registration of the domain
name, and (4) the defendant committed such acts with a bad faith
intent to profit from plaintiff's mark. 15 U.S.C. §§
1125(d)(1)(A)(i) and (ii). With respect to the "bad faith"
element, the statute lists nine non-exclusive factors for a court
to consider in determining whether a defendant has acted in bad
faith:

> (I)    the trademark or other intellectual property
>        rights of the [defendant] in the domain name;
> (II)   the extent to which the domain name consists of

the legal name of the [defendant] or a name that
is otherwise used to identify that person;

(III)    the [defendant's] prior use, if any, of the domain
name in connection with the bona fide offering of
any goods or services;

(IV)    the [defendant's] bona fide noncommercial or fair
use of the mark in a site accessible under the
domain name';

(V)    the [defendant's] intent to divert customers from
the mark owner's online location to a site
accessible under the domain name that could harm
the goodwill represented by the mark, either for
commercial gain or with the intent to tarnish or
disparage the mark, by creating a likelihood of
confusion as to the source, sponsorship,
affiliation, or endorsement of the site;

(VI)    the [defendant's] offer to transfer, sell or
otherwise assign the domain name to the mark owner
or any third party for financial gain without
having used, or having an intent to use, the
domain name in the bona fide offering of any goods
or services, or the [defendant's] prior conduct
indicating a pattern of such conduct;

(VII)    the [defendant's] provision of material or
misleading false contact information when applying
for the registration of the domain name, the
[defendant's] intentional failure to maintain
accurate contact information, or the [defendant's]
prior conduct indicating a pattern of such
conduct;

(VIII)    the [defendant's] registration or acquisition of
multiple domain names which the [defendant] knows
are identical or confusingly similar to marks of
others that are distinctive at the time of
registration of such domain names. . ., without
regard to the goods and services of the parties;
and

(IX)    the extent to which the mark incorporated in the
[defendant's] domain name registration is or is
not distinctive and famous. . .

15 U.S.C. § 1125(d)(1)(B)(i).  In addition, ACPA contains a bad-

faith "safe harbor" for a defendant who "believed and had

33

reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."  15 U.S.C. § 1125(d)(1)(B)(ii); Hartog & Co. AS v. Swix.com, 136 F.Supp. 2d 531, 541 (E.D. Va. 2001); Chatam Int'l, Inc. v. Bodum, Inc., 157 F.Supp. 2d 549, 554 (E.D. Pa. 2001).

The Complaint contends that Karl Prince used the name Thurn und Taxis, not merely because it was Karl Prince's surname, but also "to capitalize on the good will associated with the Thurn Family in international business circles, by using the Family name and referring prominently to its rich history, particularly in business matters, to promote [the Thurn und Taxis Group]." (Compl. ¶ 27.)  The Thurn & Taxis, LLC website, for example, contained information about the Thurn und Taxis Family history, a logo consisting of the Family's coat of arms and crown, all "intended to suggest, and falsely suggested that Thurn & Taxis, LLC's services or commercial activities were endorsed, sponsored, authorized or approved by Plaintiff and the Thurn und Taxis Family."  (Id. ¶ 32.)  The Complaint states that the Thurn und Taxis Family and its crown and coat of arms have been in existence for more than 300 years.  (Id. ¶ 14.)

The Court finds that the Complaint alleges use by Defendants of a domain name which contained a mark owned by Plaintiff, which

was distinctive, and was used in such a manner in bad faith.[8]


    4.  New York General Business Law § 349

    Defendants move to dismiss the New York General Business Law
§ 349 claim because Plaintiff has not pled any "harm to the
public" due to Defendants' alleged misconduct.

    Section 349 prohibits "[d]eceptive acts or practices in the
conduct of any business, trade or commerce or in the furnishing
of any service."  N.Y. Gen. Bus. Law § 349(a).  To allege a valid
§ 349 claim, a plaintiff must show that "(1) the defendant's
deceptive acts were directed at consumers, (2) the acts are
misleading in a material way, and (3) the plaintiff has been
injured as a result."  Maurizio v. Goldsmith, 230 F.3d 518, 521
(2d Cir. 2000).  "Although the statute is, at its core, a
consumer protection device, corporate competitors now have
standing to bring a claim under this [statute] . . . so long as
some harm to the public at large is at issue."  Securitron
Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995).
"It is clear that 'the gravamen of the complaint must be consumer

_____

    [8] The Court finds that the case Nissan Motor Co. v. Nissan
Computer Corp., No. CV 99-12980, 2002 WL 32006514 (C.D. Cal. Jan.
7, 2002) is not "squarely" on point, as Defendants argue, because
the court in that case did not find bad faith on the part of the
defendant when it dismissed the ACPA against him.

                              35

injury or harm to the public interest.'" Id. (quoting Azby
Brokerage, Inc. v. Allstate Ins. Co., 681 F.Supp. 1084, 1089 n.6
(S.D.N.Y. 1988)).

Defendants contend that no public harm has been alleged by
Plaintiff and that the Complaint merely alleges "confusion."
(Defs.' Reply at 7.)

The Complaint alleges that Defendants used the Thurn und
Taxis Family name in a manner to mislead consumers that the
business services provided by Defendants were sponsored or
endorsed by the Thurn und Taxis Family.  The services provided by
Defendants were investment services.  It is not such a stretch to
think that potential or actual investors could have been harmed
by this misrepresentation by Defendants.

Accordingly, the Court finds that Plaintiff has sufficiently
alleged harm to the public in the Complaint.


5.  Common Law Unfair Competition

Defendants move to dismiss the common law unfair competition
claim because Plaintiff has failed to plead "bad faith adoption
and use" of the Thurn und Taxis name.

As the Court has already found that Plaintiff has
sufficiently alleged bad faith by Defendants in using the Thurn
und Taxis Family name, the Court DENIES Defendants' Motion to

Dismiss the common law unfair competition claim.

      6.    Defendants Karl Prince von Thurn & Taxis, LLC,
            Arglen & Co., LLC and Arglen Acquisitions, LLC

Defendants move to dismiss all claims against Defendants Karl Prince von Thurn & Taxis, LLC, Arglen & Co., LLC and Arglen Acquisitions, LLC for failure to state cognizable claims against them.

Upon review of the Complaint, the Court finds that Plaintiff has sufficiently alleged claims against these Defendants.  The cases cited by Defendants involve corporate defendants who were alleged to be vicariously liable for the infringing conduct of their respective companies.  This is clearly not the case in this matter.  The Court finds that Plaintiff has satisfied the liberal pleading standards of Fed. R. Civ. 8(a) in its claims against Defendants Karl Prince von Thurn & Taxis, LLC, Arglen & Co., LLC and Arglen Acquisitions, LLC.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Complaint is DENIED.

Defendants shall file an Answer within twenty (20) days of the date of this Order.

SO ORDERED.

DATED:     New York, New York
           August 8 , 2006

                                        DEBORAH A. BATTS
                                   United States District Judge

38